1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DORIE L. HURYCH,                           No.  2:14-cv-2436-WBS-CKD

12                Plaintiff,

13          v.                                  FINDINGS AND RECOMMENDATIONS

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,

15
                 Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") finding plaintiff was not disabled for purposes of receiving Disability

20   Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons

21   discussed below, the court will recommend that plaintiff's motion for summary judgment be

22   denied and that the Commissioner's cross-motion for summary judgment be granted.

23   I.     BACKGROUND

24          Plaintiff, born April 27, 1959, applied on April 28, 2010 for DIB, alleging disability

25   beginning November 1, 2007.  Administrative Transcript ("AT") 35, 182-88.  Plaintiff alleged she

26   was unable to work due to severe chronic dry eyes, eye pressure, chronic headaches, depression,

27   ////

28   ////

                                                  1

anxiety, and acute stress and depression with migraines.  AT 208.  In a decision dated March 6,

2013, the ALJ determined that plaintiff was not disabled.[1]  AT 13-25.  The ALJ made the

following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2.  The claimant has not engaged in substantial gainful activity since November 1, 2007, the original alleged onset date.
>
> 3. The claimant had the following severe impairments: bilateral floppy eyelid syndrome, left eye dermatitis or dry eye, keratitis, an anxiety-related disorder, an affective disorder, and migraine headaches.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant retains the abilities to engage in a [sic] occupation with a specific vocational preparation (SVP) code of four or less (unskilled to semi-skilled), but not skilled work.  She should never climb ropes or ladders.  She requires accommodation for near and far acuity.

6.   The claimant is capable of performing past relevant work as a grocery clerk.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.   The claimant has not been under disability, as defined in the Social Security Act, from November 1, 2007, through the date of this decision.

AT 15-25.

II.   <u>ISSUES PRESENTED</u>

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) failed to include inflammatory conjunctivitis, superior limbic keratoconjunctivitis, and mucus fishing syndrome as "severe" impairments at step two; (2) failed to fully develop the record; (3) improperly found that plaintiff's impairments did not meet or equal Listings 2.0 and 2.04; (4) improperly considered the medical opinions of Dr. Chahal and Dr. Sierra when determining plaintiff's residual functional capacity ("RFC"); (5) failed to provide clear and convincing reasons for finding plaintiff's testimony less than fully credible; (6) improperly considered the lay witness statements; and (7) failed to consider all of plaintiff's limitations when determining whether she could perform past relevant work at step four.

III.   <u>LEGAL STANDARDS</u>

When previously granted benefits are terminated by the Commissioner, the burden of proof ordinarily shifts.  Rather than resting on a current recipient of disability benefits to prove that he or she is disabled, the burden rests on the Commissioner to prove that the applicant is no longer disabled.  "Once a claimant has been found to be disabled, . . . a presumption of continuing

3

1  disability arises in [his] favor [, and the Commissioner] bears the burden of producing evidence

2  sufficient to rebut this presumption of continuing disability."  Bellamy v. Secretary of Health &

3  Human Serv., 755 F. 2d 1380, 1381 (9th Cir. 1985); see also Saltzman v. Apfel, 125 F. Supp. 2d

4  1014 (C.D. Cal. 2000) (same).  This evidence then is reviewed under the substantial evidence

5  standard.  Saltzman, 125 F. Supp. 2d at 1019 (citing Murray v. Heckler, 722 F.2d 499, 500 (9th

6  Cir. 1983)).

7        Substantial evidence means more than a mere scintilla of evidence, but less than a

8  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

9  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable

10  mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

11  402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59

12  S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d

13  1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts

14  from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

15  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting

16  evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial

17  evidence supports the administrative findings, or if there is conflicting evidence supporting a

18  finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v.

19  Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal

20  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

21  Cir. 1988).

22  IV.    ANALYSIS

23        A.    The ALJ did not Err in Considering Plaintiff's Impairments at Step Two

24        First, plaintiff asserts that the ALJ erred at step two of the analysis by not finding that

25  inflammatory conjunctivitis, superior limbic keratoconjunctivitis, and mucus fishing syndrome

26  were "severe" impairments.

27        An impairment is "not severe" only if it "would have no more than a minimal effect on an

28  individual's ability to work, even if the individual's age, education, or work experience were

1   specifically considered." SSR 85-28.  The purpose of step two is to identify claimants whose

2   medical impairment is so slight that it is unlikely they would be disabled even if age, education,

3   and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137 (1987).  "The step-two

4   inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80

5   F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir.

6   2001).  Impairments must be considered in combination in assessing severity.  20 C.F.R. §

7   404.1523.

8        Here, although the burden is on plaintiff at step two of the sequential evaluation, see

9   Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998), plaintiff has offered no meaningful argument

10   in support of the claim that the ALJ erred by failing to find that inflammatory conjunctivitis,

11   superior limbic keratoconjunctivitis, and mucus fishing syndrome were "severe" impairments.

12   Indeed, plaintiff merely lists these impairments in her brief and asserts that the ALJ erred by not

13   identifying them as "severe" impairments at step two.  See ECF No. 16 at 6-7.  Plaintiff's bald

14   assertion is insufficient to meet her burden at step two because plaintiff provides no support from

15   the medical record indicating that these alleged impairments caused more than a minimal impact

16   on plaintiff's ability to work.

17        Moreover, even assuming for the sake of argument that the ALJ technically erred by not

18   finding the impairments plaintiff's alleges above to be severe for purposes of step two, such error

19   was harmless if the ALJ proceeded to consider the effects of that impairment at subsequent steps.

20   See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  Because the ALJ found other

21   impairments to be severe at step two, he proceeded to subsequent steps of the sequential disability

22   evaluation process.  Furthermore, the ALJ considered the impact of all of plaintiff's medically-

23   determinable impairments, regardless of their severity, when determining plaintiff's RFC.  See

24   AT 16 ("All impairments regardless of severity have been considered in the claimant's residual

25   functional capacity."), 18 (stating that the ALJ's RFC determination was based on "careful

26   consideration of the entire record").  Therefore, any error the ALJ could have committed at step

27   two by not finding the above additional impairments severe would have been, at most, harmless.

28   /////

1          B.      The ALJ Fulfilled Her Duty to Fully Develop the Record

2          Second, plaintiff argues that the ALJ failed to fully develop the record by not obtaining

3    the testimony of a "medical expert to decipher the medical evidence so that the ALJ could have

4    an adequate understanding on how plaintiff's medical impairments limited the [sic] her ability to

5    work."  ECF No. 16 at 7.  Plaintiff asserts that a medical expert was required in this case to "both

6    identify the *medically determinable impairments* that are supported by 'substantial evidence' then

7    to translate the impact of these *medically determinable impairments* on the plaintiff's ability to

8    work."  Id. (emphasis in original).

9          Disability hearings are not adversarial.  See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th

10   Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ has duty to develop

11   the record even when claimant is represented).  Evidence raising an issue requiring the ALJ to

12   investigate further depends on the case.  Generally, there must be some objective evidence

13   suggesting a condition that could have a material impact on the disability decision.  See Smolen

14   v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human

15   Services, 939 F.2d 680, 682 (9th Cir. 1991).  "Ambiguous evidence . . . triggers the ALJ's duty to

16   'conduct an appropriate inquiry.'"  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)

17   (quoting Smolen, 80 F.3d at 1288.)

18         20 C.F.R. § 404.1527(e)(2)(3) provides that the ALJ "may also ask for and consider

19   opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on

20   whether [the claimant's] impairment(s) equals the requirements of any impairment listed in

21   appendix 1 to [subpart P]."  "When [the ALJ] consider[s] these opinions, [the ALJ] will evaluate

22   them using the rules [that are used to weigh other medical opinions]."  20 C.F.R. §

23   404.1527(e)(2)(3).  Pursuant to this regulation, the ALJ in this case was permitted to obtain and

24   consider the opinion of a medical expert on the nature and severity of plaintiff's impairments, but

25   was not mandated to do so.  Furthermore, plaintiff provides no indication that any of the evidence

26   in the record before the ALJ was ambiguous or otherwise raised an issue requiring the ALJ to

27   seek further inquiry.  As discussed in further detail below, there was sufficient medical opinion

28   evidence in the record, which included the opinions of plaintiff's treating physicians, consultative

1  examining physicians, and non-examining physicians who reviewed plaintiff's medical records,

2  on which the ALJ could and did draw her determinations at each step of the five-part analysis.

3  Accordingly, plaintiff's contention lacks merit.

4      C.      The ALJ did not Err in Finding that Plaintiff's Impairments did not Meet or Equal

5              Listings 2.00 and 2.04

6      Third, plaintiff argues that the ALJ erred in finding that plaintiff's impairments did not

7  meet or equal the requirements of Listing 2.00 and Listing 2.04 in 20 C.F.R. Part 404, Subpart P,

8  Appendix 1.

9      The Social Security Regulations "Listing of Impairments" is comprised of impairments to

10 certain categories of body systems that are severe enough to preclude a person from performing

11 gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. §

12 404.1520(d).  Conditions described in the listings are considered so severe that they are

13 irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

14 the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

15 1985).

16     To meet a listed impairment, a claimant must establish that he meets each characteristic of

17 a listed impairment relevant to his claim.  To equal a listed impairment, a claimant must establish

18 symptoms, signs and laboratory findings "at least equal in severity and duration" to the

19 characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to

20 the listed impairment "most like" the claimant's impairment.  20 C.F.R. § 404.1526.  A finding of

21 equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).

22     Here, plaintiff makes no attempt to prove how her impairments possibly meet or equal

23 Listing 2.00 or Listing 2.04.  Rather, she merely makes the bare assertion that the ALJ erred in

24 finding that her impairments did not meet or equal either listing, in addition to other listings,

25 without providing any evidentiary support or even any indication for why the ALJ's

26 determination was erroneous.  Plaintiff briefly discusses some of the findings made by Dr. Chahal

27 and Dr. Sierra (AT 800, 815), but does not provide any argument as to why these findings show

28 that plaintiff's impairments meets or equals either listing.  Furthermore, neither of these two

7

1   physicians opined that plaintiff's impairments somehow met or equaled the requirements for

2   either listing, nor do their opinions provide medical evidence strongly suggesting the same.  In

3   short, plaintiff fails to provide the court with anything to support her argument that the ALJ erred

4   in finding that her impairments did not meet or equal a listing.  Accordingly, plaintiff's argument

5   is not well taken.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (holding that the

6   plaintiff failed to rebut the ALJ's determination that the plaintiff's impairments did not meet or

7   equal a listing because the plaintiff "offered no theory, plausible or otherwise, as to how his

8   [impairments] combined to equal a listed impairment" and did not point "to evidence that shows

9   that his combined impairments equal a listed impairment").

10         D.      The ALJ Properly Considered the Medical Opinions in the Record When

11                 Determining Plaintiff's RFC

12         Next, plaintiff argues that the ALJ improperly gave reduced weight to the opinions of Dr.

13   Chahal and Dr. Sierra, two of plaintiff's treating physicians.

14         The weight given to medical opinions depends in part on whether they are proffered by

15   treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

16   1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

17   greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80

18   F.3d 1273, 1285 (9th Cir. 1996).

19         To evaluate whether an ALJ properly rejected a medical opinion, in addition to

20   considering its source, the court considers whether (1) contradictory opinions are in the record,

21   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

22   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

23   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

24   rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

25   830.  While a treating professional's opinion generally is accorded superior weight, if it is

26   contradicted by a supported examining professional's opinion (e.g., supported by different

27   independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

28   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

8

1   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

2   findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

3   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

4   non-examining professional, without other evidence, is insufficient to reject the opinion of a

5   treating or examining professional.  Lester, 81 F.3d at 831.

6                   1.    Dr. Chahal

7          Dr. Chahal issued a statement in January of 2013 stating that he had treated plaintiff on an

8   intermittent basis from October of 2008 to April of 2010.  AT 816.  Dr. Chahal opined that

9   plaintiff suffered from "severe floppy eye syndrome" and "severe dry eyes."  Id.  He noted that

10  these conditions would cause plaintiff's corneas to "become dry and coarse," which would lead

11  her to suffer from poor vision, difficulties performing "computer work," and depression.  Id.

12  Ultimately, Dr. Chahal opined the following: "I suspect [plaintiff] was not able to perform any

13  meaningful work for prolonged periods."  Id.  However, he also opined that "[f]requent

14  lubrication with drops and ointments, steroids, [and] eventually surgery helped alleviate a lot of

15  her symptoms."  Id.

16         The ALJ provided the following reasons for according "little weight" to the opinion of Dr.

17  Chahal:

18          Little weight can be given to Dr. Chahal's vague opinion that he suspected that
19          [plaintiff] was unable to perform work for prolonged periods.  Suspicions and
            prolonged periods are far too indeterminate and unquantified to make a finding of
20          disability, especially when he asserted that many of the symptoms were alleviated
            with treatment and medication.  His 2013 opinion is not consistent with his
21          previous feeling in May 2009 that disability should not be chronic.

22  AT 21.  Nevertheless, the ALJ also determined that this opinion "more than support[s] a severe

23  eye impairment," which the ALJ reflected in her decision.  Id.

24         As an initial matter, plaintiff argues that Dr. Chahal's opinion was "uncontroverted,"

25  therefore requiring the ALJ to provide "clear and convincing" reasons for discounting it, rather

26  than "specific and legitimate" reasons.  However, the record clearly contains opinions contrary to

27  Dr. Chahal's opinion that plaintiff could not perform any meaningful work for prolonged periods.

28

                                                    9

1   In particular, the State agency consulting physicians opined that plaintiff was not disabled, AT

2   109, 516-20, and Dr. Perlman, one of plaintiff's other treating physicians, opined that plaintiff

3   was disabled only for a period of several months during the relevant time period, therefore not

4   meeting the durational requirement for DIB. AT 419.  Accordingly, the ALJ was only required to

5   provide "specific and legitimate" reasons for rejecting Dr. Chahal's opinion.  See Lester, 81 F.3d

6   at 830.

7        The ALJ's determination that Dr. Chahal's opinion that plaintiff could not perform

8   meaningful work for sustained periods was entitled only to "little weight" because it was too

9   vague and indeterminate and was a "specific and legitimate" reason that was supported by

10   substantial evidence.  Indeed, as the ALJ highlighted, Dr. Chahal qualified his opinion by stating

11   that he "suspected" that plaintiff could not perform work for "prolonged periods."  AT 816.

12   These qualifiers clearly supported the ALJ's determination that Dr. Chahal's opinion that

13   plaintiff's impairments precluded her from work was too vague and indeterminate as to duration,

14   or even as to whether Dr. Chahal could concretely opine that plaintiff was disabled.  Furthermore,

15   Dr. Chahal also stated in his opinion that plaintiff's treatments "helped alleviate a lot of her

16   symptoms" and presented his opinion as to the disabling nature of plaintiff's impairments in the

17   past tense, id., which further complicated Dr. Chahal's opinion because it provided a reasonable

18   alternative interpretation that his opinion was that plaintiff was previously unable to work, but,

19   through treatment, had improved to the point where she was no longer so limited.

20        The ALJ also determined that Dr. Chahal's opinion was inconsistent with his earlier

21   clinical determination that plaintiff's eye impairments would not cause chronic disability.  Indeed,

22   the record shows that as of May of 2009, Dr. Chahal did "not feel that disability should be

23   chronic."  AT 500.  Dr. Chahal's opinion contains nothing indicating that he rejected his earlier

24   prognosis.  Accordingly, the ALJ also properly relied on this contradiction in support of her

25   assignment of reduced weight to Dr. Chahal's opinion.  See Tommasetti v. Astrue, 533 F.3d

26   1035, 1041 (9th Cir. 2008) (holding that incongruities between a treating physician's medical

27   findings and that physician's opinion constitute specific and legitimate reasons for the ALJ to

28   reject that physician's opinion); Rollins v. Massanari, 261 F.3d at 856 (holding that the ALJ

10

1  properly discounted treating physician's functional recommendations that "were so extreme as to

2  be implausible and were not supported by any findings made by any doctor," including the

3  treating physician's own findings).

4            2.    <u>Dr. Sierra</u>

5       In January of 2013, Dr. Sierra issued a letter concerning the impact of plaintiff's eye

6  impairment. AT 803. In this letter, Dr. Sierra stated that she first treated plaintiff on August 17,

7  2010, noted that plaintiff had severe keratitis and dry eyes, predominantly in the left eye, and

8  prescribed plaintiff with topical medicine, steroids, and lubricants. <u>Id.</u> She also suggested

9  plaintiff undergo surgery to tighten up her left upper eyelid as she was also suffering from floppy

10  eyelid syndrome, which was "contributing to her symptoms." <u>Id.</u> Dr. Sierra also noted that

11  plaintiff did undergo this surgery and used the treatments Dr. Sierra prescribed, which led to

12  "some improvement with regards to the signs and symptoms of dry eyes such as chronic pain and

13  irritation." <u>Id.</u> However, Dr. Sierra opined that plaintiff "still has recurrent flare-ups of

14  discomfort and requires long term therapy with topical medications." <u>Id.</u> Dr. Sierra also opined

15  that "[d]uring the course of this time, [plaintiff] has felt extremely debilitated and depressed by

16  this condition." <u>Id.</u>

17       Similar to his reasons for discounting Dr. Chahal's opinion, the ALJ assigned "little

18  weight" to Dr. Sierra's opinion because "little weight can be given to such a non-concrete and

19  vague opinion." <u>Id.</u> As with Dr. Chahal's opinion, this was a specific and legitimate reason for

20  discounting Dr. Sierra's opinion.[2] Dr. Sierra prefaced her apparent opinion that plaintiff's eye

21  impairments were so limiting as to be extremely debilitating with a statement that *plaintiff* "felt"

22  that this was her level of impairment. Dr. Sierra did not indicate in her opinion letter whether she

23  agreed with plaintiff's "feeling" regarding the impact of plaintiff's impairments or that this

24  statement merely reflected what plaintiff told her during the course of treatment. Furthermore,

25  
26  [2] As with Dr. Chahal's opinion, plaintiff argues that Dr. Sierra's opinion was "uncontroverted," therefore requiring the ALJ to provide "clear and convincing" reasons for discounting it.

27  However, the opinions of plaintiff's other physicians discussed above with regard to Dr. Chahal's opinion also conflicted with Dr. Sierra's opinion, therefore requiring the ALJ to provide only

28  "specific and legitimate" reasons.

1   Dr. Sierra opined that despite improvement with the use of prescribed treatments, plaintiff "still

2   has recurrent flare-ups of discomfort," id., but in no way elaborated on the extent of the opined

3   "discomfort" or the impact it had on plaintiff's ability to perform work-related functions.  The

4   ALJ was permitted to rely on these vague aspects of Dr. Sierra's opinion to determine that it was

5   entitled to little weight.  Therefore, the ALJ properly discounted Dr. Sierra's opinion.

6        E.     The ALJ Properly Assessed the Credibility of Plaintiff's Testimony

7        Plaintiff argues that the ALJ erred in assessing the credibility of plaintiff's testimony,

8   determining that it was only partially credible without providing clear and convincing reasons for

9   doing so.

10        The ALJ determines whether a disability applicant is credible, and the court defers to the

11   ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

12   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

13   explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

14   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

15   supported by "a specific, cogent reason for the disbelief").

16        In evaluating whether subjective complaints are credible, the ALJ should first consider

17   objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

18   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

19   then may consider the nature of the symptoms alleged, including aggravating factors, medication,

20   treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

21   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

22   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

23   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

24   1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

25   01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

26   effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

27   Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

28   treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's testimony to be only "partially credible" based on the following reasons:

> The record does not support the claimant's allegations of total disability because of an eye impairment, headaches, depression, or an anxiety disorder. There is barely sufficient evidence to find a severe psychiatric impairment. There is insufficient evidence of long periods that her visual acuity was affected as evidenced in the record, as well as no formal prohibitions of driving from a treating or examining source despite a vision impairment. Moreover, the claimant testified that she drove at times, and never had a formal restriction on her driver's license. The claimant's dramatic testimony, overall, is disproportionate to the substantial medical evidence on record. She said she spent much of her day in the bathroom with a mirror and a washcloth – except when she picked up her daughter from school, or was helping her with her homework, or sometimes on her computer. The record as a whole does not support a finding of disability under the Social Security Act, as amended.

AT 23.

First, the ALJ determined that plaintiff's testimony that her impairments caused her total disability was at odds with the objective medical evidence in the record. "[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681. Here, substantial evidence supported the ALJ's determination that plaintiff's claim of complete disability was not

13

1    supported by the medical evidence in the record.  While plaintiff's treating physicians, such as

2    Dr. Perlman, initially found that plaintiff's impairments caused brief periods of disability lasting

3    up to several months, they also determined that she was likely to quickly recover from that

4    disability through the use of prescribed medication and eyelid surgery and that the disabling

5    nature of her eye impairment was not chronic.  <u>See</u> AT 419, 500.  After plaintiff underwent

6    surgery and the prescribed treatment regimen, plaintiff's physicians noted that many of plaintiff's

7    symptoms had been alleviated by the care she received, indicating that plaintiff's impairments did

8    not continue with a disabling level of severity for a period of greater than 12 months, as is

9    required for a determination of disability under the Act.  <u>See</u> AT 393, 816.  While the ALJ was

10   not allowed to rely solely on this evidence to find plaintiff's testimony less than credible, she was

11   permitted to consider such evidence in support of her credibility determination.  Because the ALJ

12   also provided other clear and convincing reasons for discounting plaintiff's testimony, she did not

13   err in considering this evidence.

14        The ALJ also determined that plaintiff's testimony that she had no restrictions on her

15   driver's license and with regard to her daily living activities undermined her claim of total

16   disability.  This constituted a clear and convincing reason for discounting plaintiff's testimony

17   that was supported by substantial evidence.  For example, plaintiff testified that she helped her

18   daughter get ready for school in the mornings and picked her up from school nearly every

19   weekday, engaged in some cooking, did laundry and some grocery shopping, and attended

20   therapy and other meetings.  AT 53-56, 58.  Evidence of these activities substantially supported

21   the ALJ's determination that plaintiff's testimony that she was completely disabled was not fully

22   credible.  <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) (holding that the ALJ

23   provided a clear and convincing reason for discounting the plaintiff's testimony by when he

24   "pointed out ways in which [plaintiff's] claim to have totally disabling pain was undermined by

25   her own testimony about her daily activities, such as attending to the needs of her two young

26   children, cooking, housekeeping, laundry, shopping, attending therapy and various other

27   meetings").  Plaintiff argues that plaintiff's statements regarding her daily living activities were

28   not sufficient evidence to undermine her claim of disability because they were done on a limited

14

1    basis and did not take up a significant part of her day.  Nevertheless, the ALJ's interpretation that

2    they did undermine plaintiff's testimony still constituted a reasonable interpretation of this

3    evidence as the duration of these daily, or at least frequent, activities was not indicated.  Given

4    the number of activities and their frequency, substantial evidence supported the ALJ's conclusion.

5    See Rollins, 261 F.3d at 857 (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) ("It is true

6    that [plaintiff's] testimony was somewhat equivocal about how regularly she was able to keep up

7    with all of these activities, and the ALJ's interpretation of her testimony may not be the only

8    reasonable one.  But it is still a reasonable interpretation and is supported by substantial evidence;

9    thus, it is not our role to second-guess it.").

10           F.      The ALJ Properly Considered the Lay Witness' Statements

11           Plaintiff next argues that the ALJ improperly failed to consider and provide sufficient

12   reasons to reject the third party lay witness statements submitted in support of plaintiff's

13   application.

14           "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

15   ability to work is competent evidence, and therefore cannot be disregarded without comment."

16   Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915,

17   918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's

18   symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to

19   discount the testimony of the lay witnesses, he must give reasons that are germane to each

20   witness."  Dodrill, 12 F.3d at 919.  Nevertheless, the ALJ is not required "to discuss every

21   witness's testimony on an individualized, witness-by-witness basis."  Molina v. Astrue, 674 F.3d

22   1104, 1114 (9th Cir. 2012).  Indeed, while the applicable regulations require "the ALJ to consider

23   testimony from family and friends submitted on behalf of the claimant," they "do not require the

24   ALJ to provide express reasons for rejecting testimony from each lay witness."  Id. (citing 20

25   C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)).  "Rather, if the ALJ gives germane reasons for

26   rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting

27   similar testimony by a different witness."  Molina, 674 at 1114.

28   /////

1    When the ALJ provides clear and convincing reasons for discounting a claimant's

2    testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the

3    ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for

4    rejecting the third-party lay witness's testimony.  Valentine v. Comm'r Soc. Sec. Admin., 574

5    F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114.  Furthermore, even when the ALJ

6    errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is

7    harmless if that layperson's testimony largely reflects the limitations described by the claimant

8    and the ALJ provides clear and convincing reasons for discounting the claimant's testimony,

9    because the layperson's testimony in such a circumstance is "inconsequential to the ultimate

10   nondisability determination in the context of the record as a whole."  Molina, 674 F.3d at 1122

11   (quotation marks omitted).

12       Here, while the ALJ specifically discussed only the third-party report of Janice R. Van

13   Heerde, and not the reports of the other lay witnesses, it is clear that she still at least minimally

14   considered all of the lay witness reports in the record.  AT 18 (stating that the ALJ'S RFC

15   decision was based on a "careful consideration of the entire record"); see also Molina, 674 F.3d at

16   1114 (stating that the ALJ is not required "to discuss every witness's testimony on an

17   individualized, witness-by-witness basis").  However, as plaintiff argues, the ALJ erred by failing

18   to provide any reasons for disregarding the lay witness testimony.  See Molina, 674 F.3d at 1114.

19   Nevertheless, this error was harmless because all of the lay witness statements in the record

20   largely echo plaintiff's own testimony regarding the impact of her impairments and extent of her

21   limitations and, as discussed above, the ALJ properly discounted plaintiff's testimony on these

22   topics.  Id. at 1122 (quoting Bucknerv. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)) ("[A]n ALJ's

23   failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ

24   referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'").

25   Accordingly, plaintiff's argument that the ALJ's error regarding the lay witness testimony

26   warrants remand for payment of benefits is without merit.

27   /////

28   /////

16

1      G.     <u>Substantial Evidence Supported the ALJ's Determination that Plaintiff Retains the</u>

2              <u>RFC to Perform Her Past Relevant Work</u>

3      Finally, plaintiff argues that the ALJ erred in determining at step four that plaintiff retains

4 the functional ability to perform her past relevant work as a grocery clerk.  Specifically, plaintiff

5 argues that the hypotheticals the ALJ posed to the vocational expert failed to take into account all

6 of plaintiff's impairments because they did not reflect the significant amount of time plaintiff

7 needed to medicate and treat her eye impairments and did not include an environmental

8 restriction, therefore making the ALJ's reliance on the vocational expert's testimony at step four

9 improper.

10      An ALJ may pose a range of hypothetical questions to a vocational expert, based on

11 alternate interpretations of the evidence.  However, the hypothetical that ultimately serves as the

12 basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

13 determination, must account for all of the limitations and restrictions of the particular claimant

14 that are supported by substantial evidence in the record as a whole.  <u>Bray v. Comm'r of Soc. Sec.</u>

15 <u>Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the

16 claimant's limitations, then the expert's testimony has no evidentiary value to support a finding

17 that the claimant can perform jobs in the national economy."  <u>Id.</u> (citation and quotation marks

18 omitted).  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that

19 are not supported by substantial evidence."  <u>Greger v. Barnhart</u>, 464 F.3d 968, 973 (9th Cir.

20 2006).  Furthermore, as the Ninth Circuit Court of Appeals has observed, an ALJ may synthesize

21 and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to

22 the vocational expert) without repeating each functional limitation verbatim in the RFC

23 assessment or hypothetical.  <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1173-74 (9th Cir. 2008)

24 (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately

25 captured restrictions related to concentration, persistence, or pace, because the assessment was

26 consistent with the medical evidence).

27 /////

28 /////

1     Here, the ALJ's hypotheticals included all of plaintiff's functional limitations stated in the

2 ALJ's RFC determination.  For the reasons discussed above, the ALJ's RFC determination was

3 based on a proper consideration of the evidence in the record, both medical and otherwise, and

4 was supported by substantial evidence.  The ALJ was not obligated to include limitations in her

5 hypotheticals to the VE that were not reflected by her well-reasoned RFC determination.  <u>See</u>

6 <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1165 (9th Cir. 2001) (stating that it is "proper for an ALJ to

7 limit a hypothetical to those impairments that are supported by substantial evidence in the

8 record").

9     Moreover, even had the ALJ erred in finding that plaintiff could still perform past relevant

10 work, such an error would have been harmless because the ALJ continued on to step five of the

11 analysis and determined, with the assistance of the vocational expert's testimony, that there were

12 other jobs that existed in significant numbers that plaintiff could still perform given her functional

13 limitations.  Plaintiff does not contest this aspect of the ALJ's decision.  Accordingly, plaintiff's

14 contention that the ALJ's determination at step four warrants reversal lacks merit.

15 V.   <u>CONCLUSION</u>

16     For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

17     1.  Plaintiff's motion for summary judgment (ECF No. 16) be denied;

18     2.  The Commissioner's cross-motion for summary judgment (ECF No. 20) be granted;

19 and

20     3.  Judgment be entered for the Commissioner.

21     These findings and recommendations are submitted to the United States District Judge

22 assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

23 days after being served with these findings and recommendations, any party may file written

24 objections with the court and serve a copy on all parties.  Such a document should be captioned

25 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26 /////

27 /////

28 /////

1   shall be served and filed within ten days after service of the objections.  The parties are advised

2   that failure to file objections within the specified time may waive the right to appeal the District

3   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   Dated:  August 25, 2015

5                                                          _____

6                                                          CAROLYN K. DELANEY
                                                           UNITED STATES MAGISTRATE JUDGE
7

8   11 Hurych.ss

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28